BILIKAM; HUNTINGTON NATIONAL BANK OF COLUMBUS, EXECUTOR, APPELLEE AND CROSS-APPELLANT, *v.* BILIKAM, APPELLANT; MEIER ET AL., CROSS-APPELLEES.

(No. 81AP-30—Decided January 12, 1982.)

Messrs. *Igo & Igo* and *Mr. Richard B. Igo,* for plaintiff-appellee and cross-appellant.

Mr. *John H. Lewis* and *Mr. Gilbert L. Krone,* for defendant-appellant.

Messrs. *Thompson, Meier & Dersom* and *Mr. Thomas D. Thompson,* for third-party defendants and cross-appellees.

MOYER, J. This matter is before us on the appeal of defendant, Frances Bilikam, from a judgment of the Court of Common Pleas of Franklin County directing a verdict for plaintiff on defendant's counterclaim for damages. Plaintiff has filed a cross-appeal from a decision of the trial court denying sanctions against defendant for failure to respond to plaintiff's discovery.

In the early 1970's, defendant, Frances Bilikam, and her husband, Wallace Bilikam, moved into the south half of a duplex house at 2639 Neil Avenue in Columbus. The house was owned by plaintiff-decedent Elma Bilikam, who resided in the north half of the house with her husband, Walter Bilikam. Walter Bilikam died in 1972. Thereafter, and until his own death in 1978, Wallace Bilikam lived in the north half of the house with his mother, Elma Bilikam, in order to help care for her. It appears from the testimony and allegations in defendant's pleadings that defendant also helped provide care for Elma Bilikam.

Shortly after the death of Wallace in 1978, the original plaintiff, Elma Bilikam, brought an action in forcible detention and for rent and damages against Frances Bilikam, who had remained in the south half of the house. The case was filed in Franklin County Municipal Court and subsequently certified to Franklin County Court of Common Pleas. Elma Bilikam died on July 6, 1980, before the case had been resolved, and Huntington National Bank, as the executor of her estate, was substituted as plaintiff in the action. The trial court granted partial summary judgment for plaintiff, ordering restitution of the property to the estate. Plaintiff thereafter dismissed its claim for rent and damages, because the death of Elma Bilikam made it impossible to prove those claims.

After the partial summary judgment was granted, the trial court tried defendant's counterclaim and defendant's cross-claim against the third-party defendants, Walter and Rose Meier. Defendant's counterclaim was founded upon allegations that she and her husband had lived in the Neil Avenue residence under an agreement with plaintiff-decedent pursuant to which they were to provide care for Elma Bilikam in return for rent-free occupancy of the south half of the house. The trial court ruled that the "Dead Man's Statute" precluded defendant from testifying and, finding that defendant had failed to prove her case, directed a verdict for plaintiff and the third-party defendants. Defendant, Frances Bilikam, appeals from the judgment and from the partial summary judgment, raising four assignments of error, as follows:

"I. The trial court erred in granting the motion of plaintiff for partial summary judgment for possession of real estate in that there was a total failure of any proof that the executor had a right to

possession or to proceed with an eviction action.

"II. The trial court erred in its application of the 'Dead Man's Statute' throughout the trial, thus restricting evidence on the theory that the Dead Man's Statute is still effective.

"III. The trial court erred in determining that appellant, Frances Bilikam, could not testify in support of her claim, thus totally defeating her claim by applying the Dead Man's Statute.

"IV. The court erred in its interpretation of Rule 804(B)(5), Ohio Rules of Evidence, by holding that the Rule limited the living party's testimony to rebuttal evidence only, which holding was contrary to the intended purpose of the evidence rule, as this exception to the hearsay rule is for the benefit of the deceased party."

On December 20, 1978, plaintiff moved the trial court for sanctions pursuant to Civ. R. 37(D) because of defendant's refusal to appear for a deposition. The trial court refused to issue the sanctions and plaintiff has filed a cross-appeal from that ruling, raising the following assignment of error:

"The Common Pleas Court erred when by decision and entry it overruled Plaintiff's (Cross-Appellant's) motion for sanctions made pursuant to Rule 37(D), Ohio Rules of Civil Procedure."

In support of her first assignment of error, defendant argues that the trial court erred in sustaining plaintiff's motion for partial summary judgment giving plaintiff possession of the real estate, because there was a total failure of proof that the executor had a right to possession of the property or a right to proceed with an eviction action. This issue arises because of an ambiguity in the will of Elma Bilikam. In Item V of her will, she bequeathed the residue of her estate to Amaranth Abbey Cemetery Association. In Item VI, she directed that the executor should sell any real estate the testatrix owned at the time of her death. If Item VI is followed, then the executor was the proper party to bring an action for forcible detention. If Item V is applied without reference to Item VI, then title vested in the Cemetery Association immediately upon the death of the testatrix, and the executor would have no power to bring such an action. *Stephen* v. *Fox* (Monroe App. 1939), 28 Ohio Law Abs. 123.

When two provisions of a will conflict, they should be reconciled so as to give effect to the general intent which is manifest in the will as a whole. *Johnson* v. *Johnson* (1894), 51 Ohio St. 446, 459. In the instant case, there is no manifest general intent which would clearly favor one item of the will over the other. However, an examination of the entire will convinces us that Item VI, directing the sale of real property by the executor, should control. Items II through IV of the will make cash bequests in the amount of $6,000 to the testatrix' relatives. Regardless of the amount of cash assets which the testatrix may have had available at the time the will was made, it is entirely possible that no cash assets would have been on hand at the time of her death. Therefore, it seems reasonable that, should that have been the case, the testatrix would have desired that the executor sell all the real property, as directed in Item VI, pay the cash bequests, and then pay what remained as the residuary estate to the Cemetery Association. We therefore hold that the executor had the power to bring an action against defendant for forcible detention.

Defendant's argument that the executor had no right to possession because it failed to comply with R.C. 2113.311 is without merit. That provision allows the executor of an estate to assume the management of real estate under certain conditions. However, where the will specifically directs the executor to sell the property, as in the instant case, there is no need for the executor to follow the procedures set out in R.C. 2113.311.

Defendant also argues that the Ceme-

tery Association, as the residuary legatee, had a right to notice of the proceedings with respect to the Neil Avenue property. Although it is clear that the Cemetery Association's rights were affected by the litigation concerning the property, defendant has cited no authority in support of her assertion that the Cemetery Association had a right to be represented in the proceedings. It is not at all clear how defendant was prejudiced by the absence from the proceedings of the Cemetery Association. However, because our disposition of the remaining assignments of error requires that the case be remanded to the trial court for further proceedings, the Cemetery Association should be given notice of such proceedings. The legatee is a party that should be joined under Civ. R. 19(A), but we do not hold that failure to join the legatee would prevent a judgment for plaintiff.

Defendant also argues that the partial summary judgment was not proper. However, there were no disputed issues of material fact. Construction of the will was clearly a question of law and the court did not err by disposing of the matter on a motion for summary judgment. Defendant's first assignment of error is not well taken and is overruled.

The remaining three assignments of error are interrelated and are considered together. Defendant contends that the trial court erred by applying R.C. 2317.03, the "Dead Man's Statute," and that the court misapplied Evid. R. 804(B)(5). We agree.

At the outset of the trial, counsel for defendant apprised the trial court that defendant intended to testify in the case. The court ruled that defendant was precluded from testifying by R.C. 2317.03, thereby rejecting defendant's argument that the Dead Man's Statute had been effectively overruled by the adoption of Evid. R. 601.

The Ohio Dead Man's Statute, R.C. 2317.03, reads in part as follows:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person except: * * *."

If the statute is still valid, it clearly applies in this case.

Evidence Rule 601, effective July 1, 1980, provides generally that every person is competent to be a witness, subject to a limited number of exceptions not applicable in this case. The Staff Note to Evid. R. 601 includes the following observations:

"Rule 601 of necessity, varies significantly from Federal Evidence Rule 601 which declares all witnesses competent in federal matters, except as otherwise provided in the Federal Rules of Evidence, and also declares that in state matters, the competency of witnesses is to be determined by state law. Rule 601 states the general rule of witness competency for Ohio. In so doing, the rule embodies certain prior Ohio practices and discards others.

"One of the purposes of Federal Evidence Rule 601 was to preserve statutes such as the dead man's statute in state matters in those states where such a statute existed. Ohio has chosen to eliminate the exclusion. Rule 601 supersedes R.C. 2317.03, the dead man's statute. By declaring all witnesses to be competent and not providing an exception for the exclusionary provisions of the dead man's statute, a conflict between the rule and the statute is created and the statute is superseded under constitutional provision. Concomitantly, Rule 804(B)(5) provides that the statements formerly excluded by the dead man's statute are exceptions to the hearsay rule. * * *"

Evid. R. 804(B)(5), referred to in the Staff Note to Evid. R. 601, reads as follows:

"(B) Hearsay exceptions. The follow-

ing are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"* * *

"(5) *Statement by a deceased, deaf-mute, or incompetent person.* The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

The Staff Note to Evid. R. 804(B)(5) reiterates and further explains Evid. R. 601 with regard to the Dead Man's Statute:

"In effect, Rule 601, governing competency of witnesses to testify, supersedes the Dead Man's statute, R.C. 2317.03, which heretofore had prevented an adverse party from testifying against a deceased person, deaf-mute or person now insane who was a 'party' to the action by virtue of a representative such as an administrator. Under Rule 601 an adverse party may testify against a deceased person, or deaf-mute or person now insane, provided that such person is a party by representation of an administrator or guardian and provided that in the discretion of the court unfair prejudice would not result pursuant to Rule 403. See the Staff Note for Rule 601.

"Because of the modification of the Dead Man's statute by Rule 601, Rule 804(B)(5) permits as an exception to the hearsay rule, testimony on behalf of the deceased person, or deaf-mute, or now insane person to 'rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person.' The new exception to the hearsay rule is a fair and necessary adjunct responsive to the modification of the Dead Man's statute. In those jurisdictions in which the Dead Man's statute has been modified or repealed, a rule similar to Rule 804(B)(5) exists. See McCormick Section 65 (2d ed. 1972), and Ray, *Dead Man's Statutes,* 24 Ohio St. L.J. 89 (1963). * * *"

In the only reported case of which we are aware, the Court of Common Pleas of Cuyahoga County adopted the position taken in the Staff Note that R.C. 2317.03 has been repealed. *Walton* v. *Elftman* (1980), 64 Ohio Misc. 45 [18 O.O.3d 232]. Although the Staff Notes are not a part of the rules, and the cited case has only persuasive value, we believe the position stated therein is correct.

Evid. R. 601 and 804(B)(5), when considered together, evince an intent to repeal the Dead Man's Statute. Were the Dead Man's Statute allowed to stand, Evid. R. 804(B)(5) would seem to give a significant advantage to the party representing the decedent, since this party would shed the hearsay barrier which formerly prevented the decedent from "speaking from the grave" by way of hearsay testimony. The opposing party would still be unable to introduce contrary evidence. Such advantage, however, would be illusory, since Evid. R. 804(B)(5) allows only evidence to rebut testimony from an adverse party. The Dead Man's Statute precludes such adverse testimony. Thus, Evid. R. 804(B)(5) would be totally useless unless the Dead Man's Statute was repealed by implication by Evid. R. 601. We are convinced that the intent was to repeal it, and the next question is whether the Supreme Court had the authority to repeal the statutory enactment with a rule.

The Ohio Supreme Court may prescribe rules regulating the procedure in Ohio courts with the caveat that the "rules shall not abridge, enlarge, or modify any substantive right." Section 5(B), Article IV, Ohio Constitution. Where a statute and a rule of the court

conflict, the statute controls in matters of substance, whereas the court rule governs in matters of procedure. There is a strong presumption that any matter covered by the Civil Rules is procedural. McCormac, Ohio Civil Rules Practice, 4, Section 1.02. We believe the same is true with the Rules of Evidence.

The Dead Man's Statute does not create a substantive right, and the abolishment thereof does not eliminate any substantive right. Even while the Dead Man's Statute was in effect, it was possible to bring an action, such as defendant's action herein, against the estate of a decedent. The Dead Man's Statute only foreclosed testimony by an adverse party concerning the obligation of the decedent. Although other methods of proof would in most cases have been less effective, they did exist. Thus, the Dead Man's Statute did not deny a cause of action. It only precluded one method of proof. Repeal of the Dead Man's Statute simply removes the barrier to that method of proving the case. It does not create any substantive right. Although it is true that the Dead Man's Statute often did preclude the party against whom it was applied from obtaining a judgment against the estate of the decedent, the "outcome-determinative" test for substance and procedure has been discredited. *Hanna* v. *Plumer* (1965), 380 U.S. 460, 468.

We hold that the Dead Man's Statute is procedural and, therefore, has been repealed by Evid. R. 601. Therefore, defendant should have been allowed to testify in the case regarding the purported agreement between herself and Elma Bilikam for care of the decedent in return for rent-free occupation of the house on Neil Avenue.

Defendant also assigns as error the trial court's ruling with respect to admission of testimony under Evid. R. 804(B)(5). In support of her argument that the Dead Man's Statute had been abolished, defendant attempted to explain to the court the interaction between Evid. R.

601 and Evid. R. 804(B)(5). Evid. R. 601 eliminates the barrier imposed by the Dead Man's Statute. Evid. R. 804(B)(5) compensates the parties substituted for the decedent by making a hearsay exception for declarations by the decedent which rebut testimony by an adverse party on a matter within the knowledge of the decedent. This allows the decedent to "speak from the grave."

Evidence Rule 804(B)(5) is not intended to apply to the party opposing the decedent. Rather, it applies to the party substituted for the decedent.

It is clear that the trial court believed that Evid. R. 804(B)(5) was intended to apply to the party opposing the decedent. While the trial court's misinterpretation of Evid. R. 804(B)(5) did not directly cause an exclusion of evidence offered by defendant, the trial court's failure to fit Evid. R. 804(B)(5) into the scheme created by the Ohio Rules of Evidence, including the repeal of the Dead Man's Statute by Evid. R. 601, did contribute to the erroneous ruling with regard to the Dead Man's Statute. The rulings of the trial court with regard to the Dead Man's Statute and with regard to Rule 804(B)(5) were erroneous.

Plaintiff argues that defendant failed to proffer the content of her testimony, thereby failing to reserve the issue for appeal. Evid. R. 103 provides that, in order to use exclusion of evidence as a basis for appeal, the substance of the evidence must be made known to the court by proffer or must be "apparent from the context within which questions were asked." Although counsel for defendant made no proffer of defendant's testimony, it is apparent what the nature of defendant's testimony would have been, and that the trial court and the other parties were aware that defendant would have testified to an agreement between herself, her husband, and Elma Bilikam. Therefore, no proffer was necessary. Defendant's assignments of error two, three and four are sustained.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this decision.

In support of its cross-appeal, plaintiff argues that the trial court erred by denying sanctions against defendant for her failure to sit for depositions of which she had proper notice. The affidavits attached to plaintiff's motion for sanctions state that defendant and her counsel were generally uncooperative in setting a time for depositions and that defendant failed to appear for two scheduled depositions. Defendant sought no protective order from the trial court. Plaintiff did seek an order striking defendant's counterclaim, entering default judgment against her, and requiring her to pay plaintiff expenses of $250. The trial court overruled plaintiff's motion. Denial of sanctions is properly appealable at this time. *Kennedy* v. *Chalfin* (1974), 38 Ohio St. 2d 85 [67 O.O.2d 90].

Civil Rule 37(D) provides the following:

"If a party * * * fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, * * * the court in which the action is pending on motion and notice may make such orders in regard to the failure as are just, and among others it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

"The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(C)."

The first part of the rule grants the trial court's discretion. Sanctions such as dismissal of an action or entry of a default judgment are severe remedies, and it is within the discretion of the court to refuse them in all but the most offensive cases. See *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 155 [65 O.O.2d 374]. The trial court did not abuse its discretion in failing to impose those sanctions in this case.

The second part of Civ. R. 37(D) is mandatory. If the trial court does not issue an order as a sanction, it is required to assess costs against the offending party and/or his attorney. The Supreme Court has held that "may" is permissive and that "shall" is mandatory unless there is a clear legislative intent that these words should have another construction. *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102 [56 O.O.2d 58] (first paragraph of syllabus).

The rule requires the awarding of reasonable expenses and attorney's fees where a party fails to appear for depositions. Such a sanction is necessary to protect deposing parties from undue expense caused by an unresponsive opponent. Furthermore, when the court deems it proper in the interests of justice, it may excuse the offending party from such expenses by making an express finding that the failure was "substantially justified" or that an award of expenses would otherwise be unjust. Such an order has not been entered in this case. Civ. R. 37(D) thus presumes a mandatory award of reasonable expenses, including attorney's fees.

Plaintiff's assignment of error is sustained to the extent that the court shall award plaintiff reasonable expenses and attorney's fees incurred by plaintiff as a result of defendant's failure to appear for depositions. The cause is remanded to the trial court for entry of such an order.

For the foregoing reasons, the judgment of the trial court is reversed, and the

cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

STRAUSBAUGH, P.J., and McCORMAC, J., concur.