OPINION
On June 11, 1991, Mabel L. Hudson executed her Last Will and Testament. Item I and Item III of the will provided as follows:
ITEM I
 I give the photos of my mother and father and a bequest of five-thousand [sic] dollars to my great niece, ROBIN HANNON, if she is living at the time of my death.
 I give the oak table in my living room to my niece, LOUISE MORGAN, if she is living at the time of my death.
 I give ten thousand dollars each to my siblings, FRED MONK, HAROLD MONK, CHARLES MONK, and ERMA LAMBERT.
 I give all of the remaining household goods, furniture, personal belongings, and other personal property to my niece, ETTA MAE WILLIAMSON, and to my brother, HAROLD MONK, or the survivor of them.
* * *
ITEM III
 I give all the rest, residue and the remainder of my estate to my nieces, ROSALEE BADER, ETTA MAE WILLIAMSON, and CATHERINE SPIEGEL, per stirpes.
Mabel Hudson subsequently died on April 11, 1993 leaving an estate which included numerous stocks, certificates of deposit, bank accounts, and other items of intangible personal property valued in excess of $300,000. Hudson's will was admitted to probate and Etta Mae Williamson was duly appointed as executrix of Hudson's estate.
In October 1993, plaintiff-appellant, Harold Monk, brought a will construction action against Williamson and twenty-two other devisees and possible heirs at law of Hudson's estate ("appellees") pursuant to R.C. 2107.46. The complaint sought to construe Hudson's will so that her intangible personal property would be distributed as "other personal property" under the fourth paragraph of Item I, rather than through the residuary clause of Item III. Appellees filed a motion for summary judgment pursuant to Civ.R. 56(C) in which they argued that the term "other personal property" as it is used in Item I of the will referred to only tangible personal property and not the stocks, certificates of deposit, bank accounts, and other items of intangible personal property which represented the bulk of Hudson's estate. The probate court granted appellees' motion for summary judgment in an order dated May 31, 1995.
On appeal, we reversed the probate court's decision and remanded the case for trial. See Monk v. Monk (Feb. 20, 1996), Clermont App. No. CA95-06-039, unreported. Our decision held that a genuine issue of material fact existed as to whether Hudson intended her intangible personal property to pass under the fourth paragraph of Item I or the residuary clause contained in Item III. Id.
A bench trial was held on December 9, 1996. The probate court heard extensive arguments from counsel and determined that Hudson's will was ambiguous as a matter of law. The probate court then heard testimony and received other extrinsic evidence of Hudson's intent. Appellant did not present extrinsic evidence of Hudson's intent, but instead chose to rely exclusively on the language of Hudson's will.
Appellees presented extensive extrinsic evidence of Hudson's testamentary intent. Hudson's former attorney, Bruce Favret, testified that he was present when Hudson executed her will on June 11, 1991. Favret read each paragraph of the will to Hudson and discussed it with her at length before the will was signed. Favret also made an audio recording of his conversation with Hudson. A printed transcript of the recording was admitted into evidence. The transcript provides, in pertinent part, as follows:
 FAVRET: You are giving your household goods and furniture and personal belongings — the stuff in the house to Etta Mae Williamson and Harold Monk.
HUDSON: Yeah, that's a good Will.
FAVRET: That's a good Will? Okay.
* * *
 FAVRET: Okay, 'cause the Will here is leaving — you are only leaving like $10,000.00 to your brothers and sister and most of it is going to either Etta Mae Williamson or Rosalee Bader or Catherine Spiegel.
HUDSON: Well —
 FAVRET: Why are you leaving it to them and not to your brothers and —
 HUDSON: Well, I want my brothers to have a fair share.
* * *
 FAVRET: Well, do you think $10,000.00 is a fair share?
HUDSON: Well what do you think?
 FAVRET: It don't matter what I think — you're the one — is the Will the one that we read over, is this the one that — this is the same as the Will we wrote up couple of years ago? [sic]
HUDSON: I didn't change it any.
* * *
 FAVRET: * * * You going to tell your brother about this?
HUDSON: No, no way.
FAVRET: Oh. . no. . why —
 HUDSON: He'll think — he'll think it's just as it was. Isn't he getting his fair share?
 FAVRET: Well, you got $10,000.00, do you think that's fair?
HUDSON: Well, yes.
* * *
 FAVRET: Okay. Whose idea was it to leave the rest, residue and remainder to Rosalee, Etta Mae and Catherine Spiegel?
HUDSON: Was mine.
Appellant, Rex Ely, an attorney who prepared a previous will for Hudson, and Mary Schweinsberg, a close friend of Hudson, each took the stand and testified in rebuttal after appellees had rested their case. Appellant, Ely, and Schweinsberg each attempted to testify to the substance of numerous out-of-court statements Hudson had allegedly made to them regarding her testamentary intent. However, the probate court excluded this testimony under Evid.R. 804(B)(5).
The probate court issued a detailed written decision on March 11, 1997 in which it found that the phrase "other property," as it is used in Item I of Hudson's will, referred to only "tangible personal property" and not "intangible items of property in [the] estate." The probate court also specifically ordered that Hudson's intangible personal property was to be distributed under the residuary clause contained in Item III, rather than under the fourth paragraph of Item I. Appellant now appeals setting forth the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE WILL OF MABLE HUDSON IS AMBIGUOUS AND IN ALLOWING THE ADMISSION OF EXTRINSIC EVIDENCE TO CONSTRUE THE WILL OVER APPELLANT'S OBJECTION.
Assignment of Error No. 2:
 THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE INTENT OF THE TESTATRIX WAS TO DISTRIBUTE HER INTANGIBLE PERSONAL PROPERTY BETWEEN HER BROTHER HAROLD MONK AND HER NIECE ETTA M. WILLIAMSON.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED WHEN ON NUMEROUS OCCASIONS IT WOULD NOT PERMIT THE INTRODUCTION OF TESTIMONY BY APPELLANT'S WITNESSES AS TO THE INTENT OF THE TESTATRIX AFTER HAVING PERMITTED SUCH TESTIMONY ON BEHALF OF THE APPELLEES.
In his first assignment of error, appellant contends that the probate court erred in considering extrinsic evidence of Hudson's intent when determining whether Hudson's intangible personal property should be distributed under Item I or Item III of the will. A probate court's sole purpose in a will construction action is to ascertain and carry out the intention of the testator. Carr v. Stradley (1977), 52 Ohio St.2d 220, syllabus; Townsend's Exrs. v. Townsend (1874), 25 Ohio St. 477, syllabus. The testator's intent must be determined from the four corners of the will itself whenever possible. Sandy v. Mouhot (1982), 1 Ohio St.3d 143,144. However, it is well settled that a probate court may admit extrinsic evidence of the testator's intent where there is doubt as to the meaning of the will. Oliver v. Bank One, Dayton, N.A. (1991), 60 Ohio St.3d 32, 34; Wills v. Union Savings Trust (1982), 69 Ohio St.2d 382, 388; Holmes v. Hrobon (1953),158 Ohio St. 508, 518.
Item I of Hudson's will provides, in pertinent part, that "I give all of the remaining household goods, furniture, personal belongings, and other personal property to my niece, ETTA MAE WILLIAMSON, and to my brother, HAROLD MONK, or the survivor of them." There is nothing in the language of Item I or in any other provision of Hudson's will which indicates whether the phrase "other personal property" refers solely to Hudson's tangible personal property or whether that language was intended to dispose of both Hudson's tangible and intangible personal property. Accordingly, we hold that the phrase "other personal property," as it is used in Item I, is inherently ambiguous and that it was consequently proper for the probate court to receive extrinsic evidence on the issue of whether Hudson intended to dispose of her intangible personal property under Item I or Item III of her will. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the probate court's decision finding that Hudson intended to distribute her intangible personal property through the residuary clause of Item III is contrary to the manifest weight of the evidence. An appellate court's function when reviewing the weight of the evidence in a civil case is to examine all of the evidence offered by the parties at trial and to then determine whether there is "some competent credible evidence going to all essential elements of the case." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80; C.E. Morris v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Chemical Bank of New York v. Neman (1990), 52 Ohio St.3d 204, 207-08; Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, 77.
After carefully reviewing the transcript of the proceedings in this case and the exhibits offered by both parties, we are satisfied that substantial, credible evidence exists to support the probate court's finding that the phrase "other personal property" in Item I of Hudson's will was only intended to apply to tangible personal property. Therefore, the probate court's judgment ordering that Hudson's intangible personal property be distributed in accordance with the residuary clause contained in Item III of her will is not contrary to the manifest weight of the evidence. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends that the probate court should not have excluded the out-of-court statements of testamentary intent Hudson allegedly made to appellant, Ely, and Schweinsberg. Evid.R. 804 governs the admissibility of a decedent's out-of-court statements and provides as follows:
 (B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * *
 (5) Statement by a deceased or incompetent person. The statement was made by a decedent or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the incompetent person is a party, and (b) the statement was made before the death or the development of the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.
Evid.R. 804(B)(5) is an exception to the hearsay rule which exists for the benefit of the executor or other personal representative of a decedent's estate whereby the decedent is permitted to "speak from the grave" in order to rebut the testimony of a living party who may testify under Evid.R. 601. Testa v. Roberts (1988), 44 Ohio App.3d 161, 167; Hamilton v. Hector (Jan. 27, 1997), Hancock App. No. 5-96-28, unreported. The hearsay exception created by Evid.R. 804(B)(5) is not applicable to the party opposing the decedent's estate. Bilikam v. Bilikam (1982), 2 Ohio App.3d 300, 305. "Rather, it is a hearsay exception for the declarations of a decedent which rebut the testimony of an adverse party and is available only to the party substituting for the decedent." Testa at 167; Hamilton at 5. The purpose of Evid.R. 804(B)(5) is to safeguard estates from fraudulent claims and to create an "evidentiary balance" between the testimony of living parties which is ordinarily permitted under Evid.R. 601 and the contradictory, but hearsay, statements of a decedent on the same matter. See Johnson v. Porter (1984),14 Ohio St.3d 58, 62-63; Simandl v. Schimandle (1982), 3 Ohio App.3d 357,363.
Our review of the record indicates that Hudson's alleged out-of-court statements of testamentary intent were offered by the appellant herein who is the party opposing the executrix of Hudson's estate. Therefore, the probate court properly concluded that these statements were not admissible under Evid.R. 804(B)(5) since the hearsay exception created by that rule does not apply where the proponent of the evidence is a party who is adverse to the decedent's estate. Appellant's third assignment of error is overruled and the judgment of the probate court is hereby affirmed.
YOUNG, P.J., and KERNS, J., concur.
Kerns, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.