OPINION
{¶ 1} Appellant Jeanetta Robinson appeals the decision of the Stark County Court of Common Pleas, Domestic Relations Division, which vacated a prior legal separation judgment entry concerning her marriage to Appellee James Robinson. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married in 1979. One child was born as issue of the marriage, age 13 at the time of the most recent proceedings sub judice. On August 16, 2000, appellant filed a complaint for legal separation. Appellee answered and filed a counterclaim for divorce. On May 23, 2001, the parties appeared with counsel before a family court magistrate. At the beginning of the hearing, the magistrate stated that she had "spent the last more than two hours talking with counsel" (Tr. at 4) and that an agreement had been reached. Appellant's counsel, during the hearing, indicated that appellee would dismiss his counterclaim, and the matter would proceed on appellant's legal separation complaint. Appellant's counsel further read into the record the agreed terms of the parties' shared parenting plan and arrangements for the division of the parties' assets. The latter category included the provision that appellee would assign and deposit in appellant's account his social security payments, as and for spousal support. Appellant was to retain all assets which were in her name. Appellee was to maintain an irrevocable trust for his assets, with the ability to invade the principal for his health or medical needs; upon his death, forty percent of the trust corpus would become payable to appellant. Sixty percent of the corpus would become payable to the parties' daughter upon the earlier of her twenty-fifth birthday or appellee's death. Tr., May 23, 2001, at 8-10. At the end of the proceedings, the magistrate directed appellant's counsel to prepare a judgment entry within ten days.
 {¶ 3} On August 8, 2001, a typed judgment entry granting legal separation and incorporating a shared parenting plan was filed with the trial court. Approval signatures were included from appellant and her counsel; however, the lines for appellee and his counsel were both filled in with "submitted and not approved."
 {¶ 4} On August 29, 2001, appellant filed a motion for an ex-parte order to require appellee to sign certain bank mortgage documents so that appellant could complete the purchase of new home. The trial court granted the motion and ordered appellee to sign the mortgage paperwork. Two days later, appellant filed a motion to show cause, alleging that appellee failed to comply with the order to sign. On September 6, 2001, the court held a hearing on the motion to show cause. However, said hearing was postponed because appellee was found to have acted offensively to the court by "being disrespectful and loud," resulting in a finding of contempt against appellee. Prior to the continued hearing date, appellee signed the documents in question.
 {¶ 5} On October 1, 2001, appellant filed a second show cause motion against appellee for failure to comply with certain aspects of the separation judgment entry of August 8, 2001, including allegedly failing to pay spousal support and failure to transfer assets to an irrevocable trust with a corporate trustee. On October 5, 2001, appellee, represented by another attorney, filed a motion for relief from judgment under Civ.R. 60(B) to have the direct contempt citation against him vacated. On October 22, 2001, appellee filed a second 60(B) motion requesting relief from the judgment entry of separation and shared parenting. Attached thereto was an affidavit stating in part the following:
 {¶ 6} "2) At that hearing I was in the courtroom for approximately three minutes at the most when Mr. Nicodemo and the Magistrate had a conversation, the contents of which I did not understand, and where my Attorney, Mr. Werren, asked me questions about issues which I did not understand.
 {¶ 7} "3) At that time, I did not agree to the provisions of the Shared Parenting Plan which has been adopted by this Court and I do not feel that those provisions provide for the best interests of my daughter.
 {¶ 8} "4) In the event that I may have acquiesced or consented to them, I was certainly confused at that time and did not understand the nature of that upon which I was asked to agree.
 {¶ 9} "5) The only thing that I remember is that I was willing to allow my wife to have my daughter for five weeks in the Summer.
 {¶ 10} "6) With respect to the division of assets and debt, at no time did I ever agree to such provisions and stated specifically at the hearing that I was not satisfied with the terms of the Agreement and further indicated that I could not understand part of the Agreement. When asked whether or not I was in agreement with the arrangements concerning my daughter, I did not even remember what anyone said those arrangements were.
 {¶ 11} "7) When I was asked whether or not I agreed to the division of assets, I do not recall what those arrangement (sic) were to have been and did not understand.
 {¶ 12} "8) I further state that the Plaintiff and her attorney did not provide any disclosure relative to the value of the Plaintiff's Pension and Deferred Compensation and that those two most significant assets were not taken into consideration by this Court in determining whether or not the proposed division of assets by the Plaintiff was in fact fair and equitable to myself and/or the Plaintiff. * * *"
 {¶ 13} On December 4, 2001, an evidentiary hearing was held regarding both appellee's 60(B) motion and appellant's show cause motion of October 1, 2001. It was undisputed that no financial affidavit had been filed with the original complaint. Appellant testified that her PERS and deferred compensation values were not disclosed to the court previously. Appellee, who was seventy-seven years of age at the time of filing, claimed to be unaware of the status of the case, and stated that the purpose of the May 23, 2001 hearing was for child support. He denied agreeing to dismiss his original counterclaim for divorce. He further claimed to have had difficulty hearing opposing counsel at the May 23, 2001 settlement hearing.
 {¶ 14} On December 12, 2001, the trial court issued a decision finding that appellee's 60(B) motion as to the financial assets of the parties was well taken. Appellant's contempt motion pertaining to financial matters was therefore found moot. However, the trial court also found that appellee's 60(B) motion as to the shared parenting agreement was not well taken, and therefore found appellee in contempt on that issue. The trial court thus vacated in part the judgment entry granting legal separation as to those matters dealing with the parties' financial assets.
 {¶ 15} Appellant timely appealed and herein raises the following four Assignments of Error:
 {¶ 16} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING ASIDE THE PORTION OF THE PARTIES' SEPARATION AGREEMENT WHICH DEALT WITH A DIVISION OF THEIR FINANCIAL ASSETS BASED UPON ALLEGED FAILURE OF APPELLANT TO COMPLY WITH STARK COUNTY DOMESTIC RELATIONS COURT LOCAL RULE 31.02.
 {¶ 17} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY PARTIALLY SETTING ASIDE THE PARTIES' SEPARATION AGREEMENT WHEN SAID AGREEMENT WAS ENTERED INTO IN OPEN COURT AFTER LENGTHY NEGOTIATIONS BETWEEN THE PARTIES.
 {¶ 18} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY PARTIALLY SETTING ASIDE THE PARTIES' SEPARATION AGREEMENT AS TO DIVISION OF FINANCIAL ASSETS BUT UPHOLDING THE AGREEMENT AS TO THE PARTIES' SHARED PARENTING AGREEMENT. THE RESULT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 19} "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY PARTIALLY GRANTING APPELLEE'S MOTION FOR 60(B) RELIEF WHEN NO DIRECT APPEAL OF THE MATTER WAS TAKEN BEFORE THIS COURT, AND WHEN APPELLEE DID NOT MEET THE STANDARDS FOR 60(B) RELIEF."
 Standard of Review {¶ 20} All of appellant's Assignments of Error challenge the trial court's decision to partially grant appellee's Civ.R. 60(B) motion to vacate. Civ.R. 60(B) reads as follows: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
 {¶ 21} "(1) mistake, inadvertence, surprise or excusable neglect;
 {¶ 22} "(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);
 {¶ 23} "(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
 {¶ 24} "(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
 {¶ 25} "(5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. * * *."
 {¶ 26} In order to prevail on a motion brought pursuant to Civ.R. 60(B), "* * * the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceedings was entered or taken." Argo Plastic Products Co. v. Cleveland (1984),15 Ohio St.3d 389, 391, 474 N.E.2d 328, citing GTE Automatic Electric v.ARC Industries (1976), 47 Ohio St.2d 146, 351 N.E.2d 113, paragraph two of the syllabus. If any prong of this requirement is not satisfied, relief shall be denied. Argo at 391.
 {¶ 27} Civ.R. 60(B) represents an attempt to "strike a proper balance between the conflicting principles that litigation must be brought to an end and justice should be done." Colley v. Bazell (1980),64 Ohio St.2d 243, 248, 416 N.E.2d 605 (citation omitted). A motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court and a ruling will not be disturbed absent an abuse of discretion. Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77,514 N.E.2d 1122. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 I. {¶ 28} In her First Assignment of Error, appellant argues the trial court abused its discretion in setting aside a portion of the prior decree based on a finding of non-compliance with a local court rule. We disagree.
 {¶ 29} Stark County Domestic Relations Court Local Rule 31.02 reads as follows:
 {¶ 30} "It is necessary for each of the parties to a divorce action to have made complete and full disclosure of their financial status prior to the date of any hearings. Each party to a pending divorce case must file with the Clerk of Courts a completed long form financial statement and deliver a copy to opposing counsel prior to the said hearing. Failure to comply with this Rule may result in the imposition of personal sanctions against the party or attorney by fine or other appropriate remedy."
 {¶ 31} Appellant urges the application of the Eleventh District's interpretation of the above rule in Swift v. Swift (Sept. 1, 2000), Trumbull App. No. 98-T-0165.[1] In that case, a husband filed a divorce complaint against his wife in Trumbull County, and thereupon moved the Trumbull County trial court to enforce a separation agreement from the parties' Stark County dissolution, which had been previously vacated in Stark County Domestic Relations Court pursuant to Civ.R. 60(B). On appeal, the Eleventh District affirmed the trial court's conclusion that the evidence supported the finding that both parties had entered into the agreement with full knowledge of the extent of the marital assets and that the agreement was fair and equitable. Id. at 2. Commenting on Stark County Local Rule 31.02, the Eleventh District Court stated: "Given that the purpose of the Stark County local rule is merely to facilitate the trial court's determination of whether a separation agreement is fair and equitable, it follows that the failure to comply with that rule would not be a basis, in and of itself, to declare an agreement invalid. That is, the fact that the financial information was not given to the Stark County court would not necessarily mean that the separation agreement was actually unfair and inequitable. * * *."
 {¶ 32} We are unpersuaded that Swift warrants a finding that the trial court in the case sub judice abused its discretion in granting relief from judgment. The trial judge's comment in the judgment entry under appeal in the case sub judice, to the effect that the filing by appellant of a financial affidavit "would have enabled the [c]ourt to adequately review the finances of the parties and determine independently the fairness of the agreement," was merely ancillary to the court's overall assessment that appellee did not understand the terms of the separation, as analyzed infra.
 {¶ 33} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 34} In her Second Assignment of Error, appellant argues the trial court abused its discretion in vacating the legal separation decree when it was obtained via a settlement agreement reached in open court. We disagree.
 {¶ 35} Appellant relies on Walther v. Walther (1995),102 Ohio App.3d 378, 657 N.E.2d 332, which states as follows in pertinent part: "Settlement agreements are favored in the law. Where the parties enter into a settlement agreement in the presence of the court, such an agreement constitutes a binding contract. (Citation omitted). Neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement. A party may not unilaterally repudiate a binding settlement agreement. * * * In the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment. (Citation omitted)." Id. At 383.
 {¶ 36} However, the facts of both Walther and Zara v. Gabrail
(Dec. 21, 1998), Stark App. No. 98-CA-0064, which is also cited by appellant, reveal that the parties therein challenging their settlement agreements had previously testified to understanding the terms thereof. In contrast, at the May 23, 2001 hearing before the magistrate, appellee first stated, in response to the agreement on asset division, "I understand it, I'm not satisfied with it, I understand it." Tr. at 13. But when his attorney asked him if he was willing to enter an agreement in court, appellee replied "[i]f the way I read it, I suppose yes. I can't understand part of it." Id. In addition, at the beginning of the May 23, 2001 hearing, the magistrate indicated that she had spent "the last more than two hours talking with counsel." It is not clear from said transcript how much interaction the respective attorneys had with their clients during this time. When asked about this issue at the 60(B) hearing, appellee testified: "No sir, the only thing that [Attorney] Curt Werren said was that there was problems that he didn't discuss anything with me ah . . . in the lobby." Tr. at 12.
 {¶ 37} We therefore find Walther and Zara to be distinguishable, and we are unable to conclude that the trial court abused its discretion under the facts and circumstances presented herein.
 {¶ 38} Appellant's Second Assignment of Error is overruled.
 III. {¶ 39} In her Third Assignment of Error, appellant argues the trial court's decision to set aside the division of assets in the separation decree, while not disturbing the shared parenting agreement, was an abuse of discretion and was against the manifest weight of the evidence. We disagree.
 {¶ 40} Appellant challenges portions of appellee's testimony as lacking credibility and inconsistent with testimony he gave at the May 23, 2001 settlement hearing. She notes, for example, at the 60(B) hearing, appellee was able to recite Internal Revenue Service provisions pertaining to assets in his daughter's name, and indicated that he handled his own investments. Tr. at 18. However, appellee's level of expertise appeared to drop during direct examination, when he asserted he didn't know that a legal separation had been granted, that his attorney failed to explain the May 23, 2001, proceedings to him, and that all he agreed to was that appellant was to get his pension after he passed away. Tr. 32. Appellant also questions appellee's testimony at the 60(B) hearing that he couldn't hear during the earlier separation agreement proceedings, which he never indicated at the time. Appellant finally questions how the trial court, in ruling on the 60(B) motion, was able to simultaneously find that appellee was not confused about the shared parenting portions of the separation agreement, a "split" decision appellant labels as arbitrary and capricious. Appellant's Brief at 21.
 {¶ 41} Nonetheless, as hereinbefore noted, the decision to grant or deny a motion made pursuant to Civ.R. 60(B) is discretionary and, thus, will not be disturbed on appeal absent an abuse of discretion.Roberts v. Roberts (June 25, 2002), Hancock App. No. 5-02-05, 2002-Ohio-3388. "Consequently, an appellate court should not independently review the weight of the evidence in the majority of cases but, rather, should be guided by the presumption that the trial court's findings are correct." Id., citing Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846.
 {¶ 42} Upon review of the transcripts of both relevant hearings in this matter, we are unpersuaded that the trial court abused its discretion in assessing the evidence presented pertaining to the motion for relief from judgment. Appellant's Third Assignment of Error is overruled.
 IV. {¶ 43} In her Fourth Assignment of Error, appellant argues the trial court abused its discretion by allowing Civ.R. 60(B) relief where appellee failed to timely appeal the original legal separation judgment entry and where appellee failed to meet the standards required for 60(B) relief. We disagree.
 {¶ 44} Appellant first cites Doe v. Trumbull Cty. ChildrenServices Bd. (1986), 28 Ohio St.3d 128, 502 N.E.2d 605, paragraph two of the syllabus, for the proposition that a Civ.R. 60(B) motion for relief from judgment is not a substitute for a timely appeal. Appellant thus argues that appellee should have raised his concerns about the fairness of the parties' legal separation decree by filing a direct appeal therefrom. However, an appellate court need not consider an error which was not brought to the trial court's attention. Restivo v. Fifth ThirdBank of Northwestern Ohio, N.A. (1996), 113 Ohio App.3d 516, 521. Our review of the record reveals no instances of appellant raising a Doe-type argument to the trial court in opposition to the 60(B) motion. We are cognizant of the Ohio Supreme Court's holding that the waiver doctrine is not absolute. See, e.g., In re M.D. (1988), 38 Ohio St.3d 149,527 N.E.2d 286. Indeed, as the Ohio Supreme Court has further explained, "[w]hen an issue of law that was not argued below is implicit in another issue that was argued and is presented by an appeal, we may consider and resolve that implicit issue. To put it another way, if we must resolve a legal issue that was not raised below in order to reach a legal issue that was raised, we will do so." Belvedere Condominium UnitOwners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, 279,617 N.E.2d 1075, 1079. However, we do not find appellant's "no substitute for appeal" argument (Doe, supra) to be the type of "implicit issue" envisioned in Belvedere. We therefore conclude appellant has waived this argument for appeal purposes.
 {¶ 45} Appellant next alleges that appellee did not meet the three-prong test for 60(B) relief as established in Argo and GTE, supra. Appellant argues that appellee failed to show he had a "meritorious defense or claim to present if relief is granted" merely by showing he was not privy to appellant's PERS and deferred compensation benefits.[2]
However, Civ.R. 60(B) only requires a party to allege a meritorious defense, it does not have to prove that it will prevail on that defense. See Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20,520 N.E.2d 564. We find sufficient compliance with the first prong ofGTE, as the trial court could have reasonably found that appellee's acceptance of the terms of the settlement would have been altered by the additional financial information, the lack of which added to appellee's misunderstanding. In regard to the second GTE prong, although the trial court did not designate under which subsection of Civ.R. 60(B) it ruled, we find a demonstration of the applicability of Civ.R. 60(B)(1) under the facts and circumstances presented. Civ.R. 60(B)(1) is a remedial rule that must be liberally construed. Colley, supra. Finally, we find no merit in appellant's assertion that five months was an unreasonable delay in bringing the 60(B) motion under the circumstances presented. (GTE,
prong three).
 {¶ 46} Appellant's Fourth Assignment of Error is therefore overruled.
 {¶ 47} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Domestic Relations Division, Stark County, is hereby affirmed.
By: Wise, J., Edwards, J., concurs separately.
Gwin, P.J., dissents.
Topic: Relief from Judgment.
[1] Appellant incorrectly asserts that Swift "reversed" an earlier Stark County decision involving the same parties. The decision under appeal was instead a judgment of the Domestic Relations Division of the Trumbull County Court of Common Pleas.
[2] Appellant additionally challenges appellee's credibility on this subject, noting that appellee typically prepared the couple's tax returns.